PEARL JEANETTE CLARK, executrix, vs. GENERAL CLEANING
COMPANY, INC.

Hampden.    October 3, 1962. — November 2, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, .
& SPIEGEL, JJ.

*Contract,* Novation, Of employment. *Practice, Civil,* Ordering verdict.

At the trial of an action against a corporation by a former employee to
recover unpaid instalments of compensation under an employment con-
tract for at least one year providing that it might "be transferred to any
purchaser . . . of the business, or in other words . . . [the employee]
is . . . an asset . . . of the business and stays with it" and containing
provisions against competition by the employee, evidence that the con-
tract was made in contemplation of a sale of the business, that the
employee consented to an assignment of the defendant's rights under
the contract to a purchaser of the business, then unknown to the em-
ployee, and that he subsequently worked for, and was paid by, the
purchaser for a short time did not warrant a finding that there was a
novation whereby the employee consented to release the defendant from
its obligations to him and agreed to accept the purchaser's obligations
under the contract in lieu thereof.    [64–65]
The record in an action for breach of a contract, in which there was a
general denial and it did not sufficiently appear that there was no real
dispute as to issues on which the plaintiff had the burden of proof and
there was oral testimony, did not permit granting of a motion for a
directed verdict for the plaintiff.    [65]

CONTRACT.    Writ in the Superior Court dated October
27, 1959.

The action was tried before *O'Brien,* J.

*Leonard S. Michelman* for the plaintiff.

*Samuel Bergson* for the defendant.

CUTTER, J.    The plaintiff's decedent, Roderick A. Clark,
had been an employee of the defendant General Cleaning
Company, Inc.[1] (General), for many years.    By an instru-
ment dated August 23, 1958, Clark agreed with General to

_____
[1] We were informed at the arguments that this was not the correct name of
General.    No argument was based upon this error and no pleading raises this
question.

act as group supervisor for it at compensation "not less than . . . [Clark's] present average earnings of $140 per week." The agreement provided that it might "be transferred to any purchaser of this branch of the business, or in other words . . . Clark is . . . an asset of this branch of the business and stays with it." General agreed to employ Clark for one year "after which . . . such employment may be terminated by either party after two weeks' notice in writing." There was evidence that, before the contract was made, General's president, who wanted Clark to have "a job for at least a year," told Clark "that the business was to be sold, and that the . . . contract would be assigned to the purchasers." Clark agreed that the contract could be assigned to the new owner of the business, but was not told who the purchasers were to be until after completion of the sale.

The contract also contained various provisions designed to protect General and its successors as employer from competition by Clark, who knew of all of General's customers. "[T]he people who were going to buy the business wanted all the key employees to have such a contract."

General's business assets were sold to Central Coat, Apron & Linen Service, Incorporated (Central), and the contract "was assigned in writing to . . . Central . . . on September 12, 1958." The instrument of assignment is not before us. Later in September, 1958, Coyne Industrial Laundry, Inc. (Coyne), took over General's former business from Central after Clark had worked for Central during a two week period. Central did not assign Clark's contract to Coyne. Clark worked for Coyne for two weeks after it took over the business. Coyne then wished to reduce Clark's salary and to obtain from him a different covenant against competition. As a consequence, Clark left Coyne's employ. He tried to earn a living as a salesman but was not able to make more than his expenses. He collected unemployment compensation for twenty-six weeks. He also unsuccessfully sought work similar to what he had done. Clark died in 1960. The plaintiff is executrix of his will.

The trial judge, subject to the plaintiff's exception, denied the plaintiff's motion for a directed verdict in her favor and directed a verdict for General in this action to recover unpaid instalments of Clark's salary for the year following August 23, 1958. Counts against Central and Coyne were discontinued prior to the trial.

The evidence indicates that Clark had a contract with General for one year's employment at a salary of not less than $140 per week. The jury were not required to conclude that General had been released from that liability by novation. "Novation, like other forms of payment, discharge or modification of existing liability, is an affirmative defence as to which the defendant has the burden of proof." *Tudor Press, Inc.* v. *University Distrib. Co.* 292 Mass. 339, 340–341. Williston, Contracts (2d ed.) § 1875. The jury would have been warranted in concluding upon all the evidence that Clark did not consent, either in advance or later, to release General from its obligations to him, despite his consent to the assignment to Central of General's rights under the contract and the circumstance that the contract was made in contemplation of the sale of General's business. The verdict for the defendant should not have been directed.

A novation may be inferred from the circumstances and from the conduct of the parties. See *Kirtley* v. *C. G. Galbo Co. Inc.* 244 Mass. 179, 182–183; *Tudor Press, Inc.* v. *University Distrib. Co.* 292 Mass. 339, 341. Such an inference, however, would not have been warranted solely by the evidence that Clark, after the assignment, went to work for Central and received his agreed compensation from Central for two weeks and later received two weeks' pay from Coyne. *Larson* v. *Jeffrey-Nichols Motor Co.* 279 Mass. 362, 365–368; *Mansfield* v. *Lang,* 293 Mass. 386, 392. See *King* v. *American Powder Co.* 290 Mass. 464, 467–468. See also *Coral Gables, Inc.* v. *Granara,* 285 Mass. 565, 572; *Cheng* v. *Chin Wai Yip,* 339 Mass. 173, 176–177; Restatement: Contracts, § 160 (4). Cf. *Horton* v. *Wickwire Spencer Steel Corp.* 239 Mass. 584, 586. Additional facts to be considered do not amount to more than the assignment itself and

Clark's advance consent thereto, given in contemplation of the sale of General's business, but without knowledge of the identity of the purchaser. In the light of the cases just cited, there was insufficient evidence to permit a finding that Clark agreed to accept Central's obligation upon the contract in lieu of that of General. See Restatement: Contracts, §§ 160 (4), 164, 423–428; Corbin, Contracts, §§ 866–867, 870–872; Williston, Contracts (2d ed.) §§ 1869–1870; (3d ed.) § 423. Cf. Pike v. Waltham, 168 Mass. 581, 587.

The plaintiff contends that her motion for a directed verdict should have been granted because there was no evidence that would warrant finding (a) that Clark had agreed to a novation, or (b) that he had not taken reasonable steps to mitigate damages by finding other employment. We assume (without deciding) that on the issue of mitigation of damages the defendant had the burden of proof. See Maynard v. Royal Worcester Corset Co. 200 Mass. 1, 6–7 (which left the point undecided); Osadchuk v. Gordon, 251 Mass. 540, 544; Levine v. Lawrence & Co. Inc. 305 Mass. 210, 212; Williston, Contracts (2d ed.) §§ 1353, 1358–1360; Corbin, Contracts, §§ 1039, 1095. See also McNally v. Schell, 293 Mass. 356, 360; Food Specialties, Inc. v. John C. Dowd, Inc. 339 Mass. 735, 748. Restatement: Contracts, § 336. There are, however, other issues as to which there was oral testimony, on which the plaintiff has the burden of proof, e.g., the existence and extent of the breach of the contract. The answer was a general denial. Accordingly, even though there seems to have been no real dispute about these issues, the record does not sufficiently show this to warrant action such as was taken in Graves v. Apt, 233 Mass. 587, 590. See Newman v. Sussman, 239 Mass. 283, 286; Douglass v. Mussman, 240 Mass. 467, 470. Cf. Great Barrington Sav. Bank v. Day, 288 Mass. 181, 185. A verdict could not have been directed for the plaintiff. McDonough v. Metropolitan Life Ins. Co. 228 Mass. 450, 452. Companion v. Columbo, 338 Mass. 620, 623. See Perry v. Hanover, 314 Mass. 167, 170; Reardon Importing Co. v. Security Trust Co. 318 Mass. 304, 307.

*Exceptions sustained.*